**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALLEN L. TREICHLER,
*Plaintiff-Appellant*,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,
*Defendant-Appellee*.

No. 12-35944

D.C. No.
3:11-cv-01333-SI

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted
May 14, 2014—Portland, Oregon

Filed December 24, 2014

Before: Arthur L. Alarcón, A. Wallace Tashima, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Tashima

# SUMMARY[*]

## Social Security

The panel affirmed in part and reversed in part the district court's decision affirming in part and reversing and remanding in part the Social Security Commissioner's denial of Allen Treichler's application for disability insurance benefits pursuant to the Social Security Act.

The panel held that the administrative law judge erred in failing to provide specific reasons for rejecting Treichler's testimony regarding the severity of his symptoms, and reversed the district court's decision to the extent it affirmed the ALJ's credibility determination. The panel also held that the record does not compel a finding of disability, and remanded to the district court to remand to the agency for further proceedings.

Judge Tashima concurred in part and dissented in part. Judge Tashima agreed with the majority that the ALJ erred in discrediting Treichler's medically determinable pain and symptom testimony based on a boilerplate credibility determination, but disagreed with the majority's remand for further proceedings. Judge Tashima would hold that the three factors of the credit-as-true rule were satisfied and that there was little doubt that Treichler was disabled, and he would remand for the award of benefits.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James S. Coon (argued), Swanson, Thomas, Coon & Newton, Portland, Oregon, for Plaintiff-Appellant.

Gerald J. Hill (argued), Assistant Regional Counsel; David Morado, Regional Chief Counsel, Social Security Administration, Seattle, Washington; S. Amanda Marshall, United States Attorney; Kelly A. Zusman, Assistant United States Attorney, Portland, Oregon, for Defendant-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Allen Treichler appeals the district court's decision affirming in part and reversing and remanding in part the Social Security Commissioner's denial of his application for disability insurance benefits pursuant to the Social Security Act. He argues that the administrative law judge (ALJ) failed to provide sufficient reasons for finding him not credible, and therefore erred in rejecting his disability claim. He also contends that in light of this error, we should remand his case to the Commissioner for the payment of benefits. We agree the ALJ erred in failing to identify the portions of Treichler's testimony the ALJ found not credible, and in failing to explain how the ALJ arrived at that conclusion. Given the conflicts and ambiguity that remain in the record, however, we remand for further proceedings rather than for an award of benefits.

I

Treichler worked as a tree trimmer until July 14, 2004, when he fell out of a tree and sustained fractures to his lumbar spine, right tibia, right heel, and left ankle. According to the evidence in the record, Treichler's fractures healed well, except for his left ankle, which developed osteomyelitis and was eventually fused.

After his surgeries, Treichler received an independent medical examination from Dr. Mark Leadbetter, an orthopedic surgeon, in November 2005. Treichler's chief complaint was lower back pain, right knee pain and ankle pain. He also reported that he had "normal bowel and bladder control," but had "difficulty with evacuation." After reviewing Treichler's medical history and performing a physical examination, Dr. Leadbetter concluded that all of Treichler's conditions, except the fractured left ankle, were medically stationary as of that date. He also opined that Treichler would be able to participate in vocational assistance activities, though weight-bearing activities would be hampered by his left ankle condition. According to Dr. Leadbetter, Treichler "would be able to stand for a total of two hours at a time in an eight hour day" but "would have to have reasonable breaks."

On the same day as Treichler's examination by Dr. Leadbetter, an occupational therapist conducted an outpatient physical capacity evaluation of Treichler. According to the evaluation, Treichler demonstrated residual physical capacities in the sedentary-light work range, and could sit, stand, and walk, each for 60 minutes at a time, four to six hours per day; could occasionally lift 20 pounds from waist to chest level and from waist to overhead level; occasionally

carry ten pounds up to 50 feet; push and pull 44 pounds occasionally; perform light, repetitive work; frequently bend and twist; occasionally do a partial squat; and climb limited stairs.  Treichler agreed with this assessment.

In 2006, Treichler enrolled in a return-to-work program for becoming a cost estimator.  A position as a cost estimator would require Treichler to sit for up to 30 minutes at a time for a total of four hours a day, and stand for four hours a day. The cost estimator could frequently change positions and would have to walk occasionally.

A July 2006 report from Dr. Craig McNabb, Treichler's treating physician, stated that he had reviewed the job description for cost estimator and felt "that [Treichler] could tolerate this job."  The same medical report stated that Treichler was on an "intermittent catheterization program" for his "neurogenic bladder," and that "[h]e seems to be tolerating it fairly well but has continued to have some problems with urinating and the intermittent catheterization is allowing him to empty his bladder fully."  Dr. McNabb also noted that Treichler was taking methadone for pain.  Dr. McNabb subsequently confirmed to the worker's compensation insurance company that he would release Treichler for the position as cost estimator.  Dr. Charles Pederson, one of Treichler's surgeons, also released Treichler for the job.

In March 2007, Treichler filed an application for disability and disability insurance benefits.  He had been seeing Dr. Kent Toland, a urologist, for a urinary tract infection.  Dr. Toland advised Treichler that he should catheterize at least twice a day.  A nurse had noted that Treichler's "bladder seems to be able to trigger a normal

pressure but unable to sustain enough of a contraction to empty his bladder completely. He is having large postvoid residuals. This is contributing to his urinary frequency and nocturnal enuresis." The nurse also reported Treichler's claims that he "wet the bed" at night. During his visits to the urologist, Treichler complained of constipation, but denied any fecal incontinence.

On August 20, 2007, non-examining state physician Dr. Sharon Eder reviewed Treichler's medical file and completed a physical residual functional capacity assessment. Dr. Eder concluded that Treichler could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for a total of at least two hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch and crawl. Non-examining state physicians Dr. Martin Kehrli and Dr. Jeffrey Wheeler confirmed this assessment.

Treichler's disability claim was denied on August 22, 2007, and again upon reconsideration on January 9, 2008. Treichler filed a written request for a hearing on February 4, 2008.

In March 2008, Dr. McNabb reported that methadone "seems to be controlling [Treichler's pain] adequately." A subsequent report in September 2008 stated that while Treichler continued to have pain, "[t]he methadone does help significantly." A year later, Dr. McNabb stated that the methadone "seems to be allowing [Treichler] to be somewhat functional without any significant decrease in his abilities," though it also noted that Treichler "still is not very active because it does not take all of his pain away." And in September 2009, Dr. McNabb reported that Treichler "states

that the methadone is making his life tolerable." While "he still has significant amount of pain at times," Treichler reported that "for the most part he is able to do most of his activities."

The hearing before the ALJ took place in Albany, Oregon, on December 15, 2009. Treichler submitted medical records and testified regarding the severity and impact of his symptoms. Treichler claimed he was "not very mobile," and that he frequently experienced severe pain in his back and right ankle. Treichler testified that although he can stand and walk, it causes pain and he has to sit down after five to ten minutes. He also stated that he drives a car a short distance, can do household chores if he has to, takes care of his dog, and goes fishing occasionally. In addition, he works in his woodworking shop when he gets bored. Treichler described a typical day as getting up, making himself a meal, playing with his pets, and sometimes doing yard work. According to Treichler, his back is always in pain and he has a really bad day "[p]robably twice a week." On a bad day, he may stay in bed all day. Treichler testified that methadone "takes away a lot of it [pain], but it—I mean nothing takes away all of it."

When asked about his urinary incontinence, Treichler testified that his "bladder just lets go" and he "wet[s] [him]self" around two to three times a week, "a lot at night." He also related that on a "bad week during the daytime" he might lose bladder control "[p]robably three times." Treichler's bladder difficulties require him to self-catheterize up to four times a day. With regard to fecal incontinence, Treichler claimed that "about once or twice a month" he "just lose[s] it."

His wife testified at the hearing and described the lifestyle changes she and her husband have had to make following his surgeries. She also described how Treichler "really has a problem [with urinary incontinence] at night. You know, I've noticed two or three times during the night a lot of times he'll even have to change his clothes."

The hearing concluded with testimony from a vocational expert. The ALJ described a hypothetical person who had the following characteristics: the person had "the same age, education and vocational background as Mr. Treichler"; the person "could lift 20 pounds occasionally, 10 pounds frequently," could "sit[] six hours out of a normal eight-hour work day" and "stand and walk two hours," "should never be required to climb," although capable "of occasionally balancing, stooping, kneeling, crouching and crawling"; the person should "avoid even moderate exposure to hazards," and "have the option . . . . to change position at least four times an hour to alleviate his discomfort"; and finally the person "is going to need to be able to go to the bathroom essentially at will, because of incontinence issues." The expert testified that there were a significant number of jobs available in the national economy and in the region where Treichler lived that could be performed by someone with these physical characteristics, including the job of a document sorter.

Treichler's attorney then inquired whether a person who "twice a week . . . [is] going to make a mess and need time to . . . either take a shower or clean up or he's going to be unable to clean up and going to be a—frankly, a[n] ol[]factory nuisance" would be able to maintain employment. The vocational expert testified that such a person would not be able to do so. The attorney next asked about a different

hypothetical person, one who "would miss more than two days of work per month on a random and unpredictable basis." The expert again opined that no work would be available for someone who would have to miss that much work.

The ALJ followed up by asking whether allowing breaks for self-catheterization was "an acceptable accommodation from employers," and the expert agreed that "it can be worked around." The ALJ asked whether a person could use two 10 to 15 minute breaks for self-catheterization and still be able to maintain employment. The vocational expert said that those breaks were not "excessive." But when asked by Treichler's attorney whether an employer would tolerate a situation where "twice a month at randomly and unpredictably there's a loss of bowel control despite best efforts," the expert said that there would not be available work for such a person.

The ALJ issued a written decision denying Treichler's application for disability on January 5, 2010. To assess whether Treichler was disabled, the ALJ employed the five-step sequential evaluation[1] for determining disability. At

---

[1] The five-step sequential evaluation of disability is set forth at 20 C.F.R. § 404.1520. Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of

step one, the ALJ determined that Treichler had not engaged in substantial gainful activity since the alleged onset date of his disability, which was the date of Treichler's fall. The ALJ determined at the second step that Treichler suffered from severe impairments: status post fractures of the lumbar spine, left wrist, right ankle, right tibia, and left tibia, neurogenic bladder, cauda equina syndrome, and chronic pain syndrome. The ALJ then found at step three that none of Treichler's impairments, either alone or in combination, met or equaled any of the SSA's listed impairments.

Before considering step four of the sequential evaluation process, the ALJ had to assess Treichler's residual functional capacity ("RFC"), *see* 20 C.F.R. § 404.1520(a)(4)(iv), which is "the most [the claimant] can still do despite [the claimant's] limitations." *Id.* § 404.1545(a)(1). The RFC assessment is "based on all the relevant medical and other evidence" in the claimant's record. *Id.* § 404.1520(e).

In his written decision, the ALJ set out his determination regarding Treichler's RFC based on the ALJ's credibility findings and the weight he assigned to various pieces of

---

disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotation marks omitted).

medical evidence.  According to the ALJ, Treichler could perform light work, with some restrictions.[2]    After summarizing Treichler's testimony at the hearing regarding his pain and limited activities, the ALJ stated that Treichler's "medical determinable impairments could reasonably be expected to cause the alleged symptoms," but that Treichler's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

The ALJ next summarized the medical evidence and indicated what weight he assigned to the various reports.  The ALJ noted that Dr. McNabb and Dr. Pederson opined that Treichler's symptoms were medically stationary.  The ALJ gave great weight to Dr. Leadbetter's conclusion that Treichler's condition had stabilized and Treichler could participate in vocational assistance activities, including being able to stand for two hours at a time with reasonable breaks. The ALJ also gave weight to several physical capacity evaluations that stated that Treichler had the ability to perform sedentary-light work.   Three non-examining consulting physicians agreed that Treichler had a RFC of light work with some movement limitations, and the ALJ gave "these assessments controlling weight as they are consistent with the medical evidence of record."

---

[2] Those restrictions were that Treichler "must change positions every 15 minutes, can occasionally balance, stoop, kneel, crouch, and crawl, can perform unskilled work consisting of simple tasks with simple instructions, should have no more than moderate exposure to unprotected heights, moving machinery, and other workplace hazards, and needs to be in close proximity to a bathroom."

Moving to step four, the ALJ found that Treichler was unable to perform any of his past relevant work as a tree trimmer and cable installer. At step five, the ALJ relied on the vocational expert's testimony that jobs existed in the national economy for someone with Treichler's age, education, experience, and RFC. Specifically, the vocational expert stated that a person with Treichler's RFC could work as a document sorter. As a result, the ALJ held that Treichler was not disabled under the Social Security Act, 42 U.S.C. § 416(i), 423(d). The Appeals Council denied Treichler's request for review of the ALJ's decision.

Following an unsuccessful administrative appeal, Treichler sought review of the Commissioner's decision in district court. The district court upheld the ALJ's determination that Treichler's testimony regarding the "intensity, persistence and limiting effects" of his symptoms was not credible, but ruled that the ALJ erred by implicitly rejecting Treichler's wife's testimony, without providing germane reasons for doing so. The court therefore remanded to the ALJ for further proceedings.

Treichler now appeals the district court's decision affirming the ALJ's adverse credibility determination, and argues that the case should be remanded for an award of benefits. Although Treichler prevailed before the district court, he may nevertheless appeal the decision, because it does not grant the full measure of relief requested. *See Forney v. Apfel*, 524 U.S. 266, 271 (1998).

II

We begin by considering the legal framework for addressing Treichler's claims that the ALJ erred in making

his credibility determination, and that we should therefore remand his case for an award of benefits. We review de novo a district court's decision to affirm in part, reverse in part, and remand to the Commissioner. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). We review the district court's decision to remand for further proceedings or to direct a payment of benefits for an abuse of discretion. *Id.* at 1173.

A

In Title II of the Social Security Act, Congress entrusted the Commissioner with the power and authority to enact rules and regulations that govern the disability determination. *See, e.g.*, 42 U.S.C. §§ 405, 421, 423. In particular, Congress authorized the Commissioner to "make findings of fact, and decisions as to the rights of any individual applying for a payment" under the Act. *Id.* § 405(b)(1). By law, the disability determination is made by the Commissioner or authorized state agencies under the Commissioner's supervision. *See id.* §§ 405, 421; 20 C.F.R. § 404.1503. If the Commissioner's decision is unfavorable, it must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 404(a). The statute allows a claimant receiving an adverse decision to obtain administrative review. *Id.* § 405(b)(1).

After the final decision by the Commissioner, the claimant "may obtain a review of such decision by a civil action" in district court. *Id.* § 405(g). As with other agency decisions, federal court review of social security determinations is limited. We disturb the Commissioner's decision to deny benefits "only if it is not supported by

substantial evidence or is based on legal error." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress "places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966). Consequently, we leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record. *See* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive."); *Andrews*, 53 F.3d at 1039.

Even when the ALJ commits legal error, we uphold the decision where that error is harmless. "We have long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination," *id.* (internal quotation marks omitted), or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity," *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004) (internal quotation marks omitted).

B

If the reviewing court determines "that the agency erred in some respect in reaching a decision to deny benefits," *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007) (alterations omitted), and the error was not harmless, *Molina*,

674 F.3d at 1115, sentence four of § 405(g) authorizes the court to "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[3] Because "a judicial judgment cannot be made to do service for an administrative judgment," *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943), when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).[4] The Supreme Court has referred to this remand requirement as the "ordinary 'remand' rule." *Gonzalez v. Thomas*, 547 U.S. 183, 185 (2006) (internal quotation marks omitted).

The ordinary remand rule applies equally to Social Security cases. *See, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d

---

[3] The other type of remand authorized by § 405(g) appears in the sixth sentence, and allows the reviewing court to remand "where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Hoa Hong Van*, 483 F.3d at 605.

[4] The Supreme Court has not defined what "rare circumstances," *Lorion*, 470 U.S. at 744, would justify a departure from the ordinary remand rule. An early case suggested that those circumstances would arise only when remand would be a mere formality. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). In later decisions, the Supreme Court has frowned upon deviations from the ordinary remand rule and has reversed decisions where we declined to remand to the agency after detecting an error. *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657–58 (2007); *Gonzalez v. Thomas*, 547 U.S. 183,186–87 (2006); *INS v. Ventura*, 537 U.S. 12, 16 (2002).

1028, 1044 (9th Cir. 2007); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). While we generally remand to the agency for "additional investigation or explanation," *Lorion*, 70 U.S. at 744, Congress has granted courts some additional flexibility in § 405(g) "to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). "Without this additional authority, a district court could not remand a case for immediate payment of benefits in connection with a reversal of the Commissioner's denial of benefits but could only remand the case for rehearing." *Id.*; *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (noting that a Social Security case should usually be remanded to remedy defects in the administrative proceeding, but that "in appropriate circumstances" § 405(g) authorizes a court to remand for benefits). We review the exercise of such authority for an abuse of discretion, reasoning that "Congress did not state that district courts 'shall' exercise this additional power but simply gave district courts the authority to do so in an appropriate case," and therefore the exercise of such authority "was intended to be discretionary." *Harman*, 211 F.3d at 1178. Further, "there are sound practical reasons why we have viewed our own decisions in this area as discretionary," namely because the "decision whether to remand for further development of the administrative record or to direct an immediate award of benefits is a fact-bound determination that arises in an infinite variety of contexts," and "[n]arrow rules do not serve well in such a situation." *Id.* at 1177. Our case law strikes a balance between the ordinary remand rule that generally guides our review of administrative decisions and the additional flexibility provided by § 405(g), and thus we generally remand for an award of benefits only in "rare circumstances," *Moisa*, 367 F.3d at 886, "where no useful purpose would be served

by further administrative proceedings and the record has been thoroughly developed." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (internal quotation marks omitted).

We first described the circumstances where departing from the ordinary remand rule may be permissible in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) (*Varney II*). In our prior opinion in the same case, *Varney v. Sec'y of Health & Human Servs.* (*Varney I*), we held it was improper for the ALJ to reject the claimant's excess pain testimony as exaggerated and not credible "solely on the ground that it is not fully corroborated by objective medical evidence." 846 F.2d 581, 582, 584 (9th Cir. 1988). In *Varney II*, we determined that "no further proceedings [were] necessary to develop the administrative record," 859 F.2d at 1400, and there were "no outstanding issues that must be resolved before a proper disability determination" could be made, *id.* at 1401, and therefore took the unusual step of declaring the claimant to be credible as a matter of law, *see id.* at 1398, 1401 ("[I]f the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true." (internal quotation marks omitted)). Although such credibility determinations are generally the perquisite of the agency, *see* 42 U.S.C. § 405(b),(g), we justified this approach as a prophylactic measure designed to motivate the Commissioner to ensure "that pain testimony will be carefully assessed and its importance recognized," *id.* at 1398, and also by referring to equitable concerns about the length of time that had elapsed since the claimant had filed her application, *see id.* at 1398–99. Accordingly, because it was "clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were

credited," we remanded for an award of benefits instead of further proceedings on the claimant's credibility. *Id.* at 1401.

We subsequently distilled the *Varney* rule (sometimes referred to as the "credit-as-true" rule) into three steps. Under this procedure, we first ask whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1020; *see also Moisa*, 367 F.3d at 887.

Second, if the ALJ has erred, we determine whether "the record has been fully developed," *Garrison*, 759 F.3d at 1020, whether there are "outstanding issues that must be resolved before a determination of disability can be made," *Moisa*, 367 F.3d at 887, and whether further administrative proceedings would be useful, *see Varney II*, 859 F.2d at 1399. Administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence . . . may well prove enlightening" in light of the passage of time, *Ventura*, 537 U.S. at 18. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1466–67 (9th Cir. 1996) (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill v. Shalala*, 12 F.3d 915, 918, 919 (9th Cir. 1993) (same); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc) (same). Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an

award of benefits is inappropriate. *See, e.g.*, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).[5]

Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we may apply our prophylactic *Varney* rule, finding the relevant testimony credible as a matter of law, *see Vasquez v. Astrue*, 572 F.3d 586, 600–01 (2008) (Hawkins, J., concurring) (describing how the *Varney* rule has been used); *Harman v. Apfel*, 211 F.3d 1172, 1178–79 (9th Cir. 2000), and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceeding," *Wyman-Gordon*, 394 U.S. at 766 n.6.

When all three elements of this *Varney* rule are satisfied, a case raises the "rare circumstances" that allow us to exercise our discretion to depart from the ordinary remand

---

[5] The dissent appears to believe that a court should generally remand for benefits and may remand for further proceedings only if the record is incomplete, such as when the ALJ has not heard critical testimony from a treating physician or if a vocational expert had not considered all relevant testimony. Dissent at 33, 37. This is directly contrary to our jurisprudence, which requires remand for further proceedings in all but the rarest cases, *see Moisa*, 367 F.3d at 887. Indeed, a court abuses its discretion if it remands for an award of benefits when not all factual issues have been resolved. *See, e.g.*, *Bunnell v. Barnhart*, 336 F.3d 1112, 1115–16 (9th Cir. 2003) (rejecting a petitioner's appeal of a district court's remand for further proceedings instead of for an award of benefits where there were outstanding issues relating to the severity of the petitioner's impairments, whether the petitioner was capable of performing sedentary work, and whether the ALJ had to credit her testimony as true, or would be able to adequately explain why he did not credit her pain testimony, per *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

rule.**[6]**  Of course, even when those "rare circumstances" are present, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion," *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).  *See, e.g.*, *Harman v. Apfel*, 211 F.3d at 1178 (holding that the exercise of authority to remand for benefits "was intended to be discretionary and should be reviewed for abuse of discretion").  We have frequently exercised our discretion to remand for further proceedings, rather than for benefits. *See Connett v. Barnhart*, 340 F.3d 871, 874–76 (9th Cir. 2003) (citing cases and reaffirming that the reviewing court retains discretion to remand for further proceedings even when the ALJ fails "to assert specific facts or reasons to reject [the claimant]'s testimony"); *see also Garrison*, 759 F.3d at 1021 (noting that a district court retains the flexibility to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is,

---

**[6]** Our sister circuits are generally in accord with our rule that "the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits." *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001); *see also Gentry v. Comm'r of Social Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for an award of benefits only where "all necessary factual issues have been resolved, the proof of disability is strong, and opposing evidence is lacking in substance, . . . or where the proof of disability is overwhelming"); *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000) (refusing to remand for an award of benefits because the record did not "provide[] persuasive evidence of total disability that rendered any further proceedings pointless").  By contrast, our prophylactic rule that a claimant's testimony is credible as a matter of law if the ALJ fails to provide adequate reasons for discrediting it has been adopted only by the Eleventh Circuit. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

in fact, disabled within the meaning of the Social Security Act.").

### III

We turn now to Treichler's claim that the ALJ erred in ruling that Treichler's statements about the limiting effects of his medical problems were not credible.

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible. 42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell*, 947 F.2d at 344). Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," *Chenery Corp.*, 318 U.S. at 87, the agency must explain its reasoning. Consequently, to ensure our appellate review is meaningful, *Bunnell*, 947 F.2d at 346, we require the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Holohan*

*v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). That means "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

Here, the ALJ found that Treichler's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and did not find that Treichler was malingering. The ALJ did not, however, "specifically identify the testimony" he found not credible. *Holohan*, 246 F.3d at 1208. Rather, he made only the single general statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination. *See, e.g.*, *Kamann v. Colvin*, 721 F.3d 945, 949–51 (8th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 645–47 (7th Cir. 2012). After making this boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why. *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014).

But here, the ALJ stopped after this introductory remark. This was error and falls short of meeting the ALJ's responsibility to provide "a discussion of the evidence" and "the reason or reasons upon which" his adverse determination is based. 42 U.S.C. § 405(b)(1). An ALJ's "vague allegation" that a claimant's testimony is "not consistent with the objective medical evidence," without any "specific findings in support" of that conclusion is insufficient for our

review. *Vasquez*, 572 F.3d at 592. As our sister circuits have concluded, "[c]redibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). The ALJ must identify the testimony that was not credible, and specify "what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Nor is the error harmless. Because the ALJ set out his RFC and summarized the evidence supporting his determination, the government argues that we can reasonably infer that the ALJ rejected Treichler's testimony to the extent it conflicted with that medical evidence. But we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. *See Bunnell*, 947 F.2d at 346. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. *See Holohan*, 246 F.3d at 1208. No such reasoning is present here. Because "the agency's path" cannot "reasonably be discerned," *Alaska Dep't of Envtl. Conserv.*, 540 U.S. at 497, we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination.

## IV

We now come to Treichler's contention that we should exercise our discretion to remand his case for an award of benefits. In making this argument, Treichler points to his testimony regarding the severity of his urinary incontinence, fecal incontinence, and disabling pain, and the vocational

expert's testimony that a person who has such problems would not be able to maintain employment.

We begin our analysis with our three-step framework to deduce whether this is one of the rare circumstances where we may decide not to remand for further proceedings. *See Garrison*, 759 F.3d at 1020. At the first step, we conclude, for the reasons stated above, that "the ALJ has failed to provide legally sufficient reasons for rejecting . . . claimant testimony." *Id.*

Second, we turn to the question whether further administrative proceedings would be useful. *Id.*; *Varney II*, 859 F.2d at 1401. In evaluating this issue, we consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules. *See Moisa*, 367 F.3d at 887.

In this case, there are significant factual conflicts in the record between Treichler's testimony and objective medical evidence. With regard to his incontinence issues, Treichler testified that he "wet[s]" himself "two or three times a week," mostly at night, while on a "bad week during the daytime," he could lose control of his bladder "[p]robably three times" in a week. This testimony conflicts with other evidence in the record as to daytime urinary incontinence. Dr. Toland, Treichler's urologist, and the nurses who treated him for his bladder impairments uniformly observed that Treichler had difficulty voiding urine during the day, while he suffered from incontinence at night. For example, an August 24, 2006 progress note reflects that Treichler "has had difficulty voiding with occasional leakage of urine especially at

nighttime often soaking the bed" leading to a diagnosis of nocturnal enuresis. Other notes similarly reported that Treichler claimed that he "gets up multiple times throughout the night" and "often will wet the bed," or that Treichler "feels that he has to strain to empty his bladder, has significant urinary frequency getting up 5 or more times at night," wetting the bed "[a]bout 2–3 times a week." The notes consistently report that the incontinence issue occurs at night, while Treichler claims that he regularly has daytime problems.

Treichler also testified that he experienced fecal incontinence where he would "just lose it . . . about once or twice a month." The one relevant medical report in the record on this issue, however, stated that Treichler reported constipation and "denie[d] any fecal incontinence." There is no other evidence of complaints to his doctors or other medical professionals regarding fecal incontinence.

Finally, Treichler testified that he had debilitating pain twice a week that resulted in him just laying in bed. Dr. McNabb, however, noted that Treichler's pain medication makes his life "tolerable," and that he is able to perform the majority of his activities. At the hearing, Treichler testified that medication "takes away a lot of it [pain]," while not "all of it."

The dissent's assertion that "the record amply supports Treichler's testimony," Dissent at 34, and therefore a court is required to remand for an award of benefits, is wrong factually and legally. The dissent points to single words or phrases plucked from individual reports in the record to support its conclusion that Treichler's pain renders him disabled. *See* Dissent at 35. But when read in context, the

record indicates only that Treichler required medical assistance to manage the pain stemming from his injuries; it does establish that this pain rendered him unemployable.[7] In any event, we are not deciding Treichler's disability claim de novo; rather, we are considering whether the district court

---

[7] For instance, the dissent cites Dr. Mullins's statement in 2004 (just months after Treichler's injury) that Treichler "still has considerable pain," Dissent at 35, but fails to quote the rest of the sentence, stating that Treichler "is taking 12 to 18 oxcodone a day *to good control.*" The dissent cites Dr. McNabb's statement from 2009, that Treichler still "has a significant amount of pain at times," Dissent at 35, but again skips over the second half of the sentence, "although for the most part he is able to do most of his activities" with a lower dosage of pain medications. The dissent cites Dr. McNabb's statement in 2006 that the pain "was getting somewhat constant," Dissent at 35, but ignores the second half of the statement "but the pain has been getting somewhat better." Later in the same report, Dr. McNabb states that Treichler's "pain level is 3 out of 10 and usually goes away 3 or 4 hours after he takes his medication," and that Treichler was undergoing vocational rehabilitation and was "going to be doing deskwork, light duty type of activities in the future." Finally, Dr. McNabb noted that Treichler intended to decrease his methadone to "10 mg 3 times a day," and the doctor wanted to "further discuss weaning him off narcotic medications if we can." Accordingly, even the reports cited by the dissent do not establish that Treichler was unable to perform any sort of work.

The dissent's other citations are equally unpersuasive. The dissent cites to a description of Treichler's pain as "acute," Dissent at 35, but that language comes from a report of Treichler's scrotal testicular pain after an infection, which was subsequently resolved. The statement by Treichler's wife that "some days [Treichler] doesn't seem like he can move at all," Dissent at 35, is not relevant here, since the district court remanded the case to the ALJ to consider whether there are germane reasons for disregarding the wife's testimony, and that ruling is not on appeal here. The dissent also cites to reports discussing Treichler's bladder and bowel problems, Dissent at 35, but all the cited reports state that the bladder incontinence occurs at night, and the bowel problems do not cause incontinence.

abused its discretion in determining that there are outstanding issues in the record that should be decided by the agency under the ordinary remand rule.

In light of the conflicts and ambiguities in the record, the district court would not abuse its discretion in concluding that not all essential factual issues have been resolved, or that "the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." *Holohan*, 246 F.3d at 1210. Rather, the record raises crucial questions as to the extent of Treichler's impairment given inconsistencies between his testimony and the medical evidence in the record. These are exactly the sort of issues that should be remanded to the agency for further proceedings. *See Andrews*, 53 F.3d at 1039. Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency. For example, in *Nguyen v. Chater*, the ALJ failed to give specific and legitimate reasons for discounting the testimony of a claimant's spouse regarding the extent of the claimant's impairment, but there may have been contrary medical evidence in the record. 100 F.3d at 1467. We remanded the case to the ALJ for further proceedings without precluding the ALJ "from reopening the hearing to receive additional evidence should such a course of action be deemed appropriate." *Id.*; *see also Byrnes*, 60 F.3d at 642 (holding that the ALJ erred in making inadequate findings to support his conclusion that the claimant was not credible and remanding "for further findings evaluating the credibility of [claimant's] subjective complaints," while noting that on remand the ALJ could deny benefits if he made adequate findings). The same approach is appropriate here.

Treichler argues that because the ALJ erred, we should credit his testimony as true. Once we have done so, he argues, there would be no outstanding issues to resolve and we should remand for benefits. The dissent likewise contends that a court must first take the claimant's testimony as true and then determine if there are any outstanding issues that require resolution. Dissent at 38. This is an erroneous reading of our case law, which requires us to assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law. *Garrison*, 759 F.3d at 1020; *Connett*, 340 F.3d at 876. Under the dissent's approach, a court would have to disregard any evidence in conflict with the claimant's testimony, and remand for benefits even if the objective medical evidence in the record indicated that the claimant was not disabled. But an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true. As we have explained in the context of testimony regarding impairments due to excess pain, "[a]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989). By the same token, a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony. "The Disability Insurance and Supplemental Security Income programs are intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute." *Id.* Accordingly, only where "there are no outstanding issues that must be

resolved before a determination of disability can be made," do we have discretion to credit a claimant's testimony as true and remand for benefits, and only then where "it is clear from the record that the ALJ would be required to find [the claimant] disabled" were such evidence credited. *Moisa*, 367 F.3d at 887. While we have recognized the impact that delays in the award of benefits may have on claimants, such costs are a byproduct of the agency process, and do not "obscure the more general rule that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman*, 211 F.3d at 1179.

Treichler's reliance on *Benecke v. Barnhart* and *Vasquez v. Astrue* to support his argument is misplaced. In *Benecke*, we held that the ALJ erred in ruling that the claimant was not credible regarding "the extent of her impairments," 379 F.3d 587, 593 (9th Cir. 2004), where "the record including the limited vocational expert testimony, clearly establishes that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy," *id.* at 595; *see also id.* (noting that "in the *unusual* case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy . . . remand for an immediate award of benefits is appropriate" (emphasis added)).[8] As we have explained, in this case the

---

[8] In reaching this conclusion, *Benecke* did not expressly analyze the statements of the non-treating and non-examining physicians who indicated that the claimant had seriously impaired functioning due to a psychological disorder (somatization disorder) rather than fibromyalgia. 379 F.3d at 592. Recognizing that the opinions of non-treating and non-examining physicians do not, by themselves, "constitute substantial evidence that justifies the rejection of the opinion" of a treating doctor, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *Benecke* implicitly held that the conclusions of the non-treating and non-examining physicians did

district court could reasonably determine, based on the inconsistencies between Treichler's testimony and the medical reports, that it is not clear from the record that Treichler is disabled. *Vasquez* is even less helpful to Treichler. In that case, the ALJ erred in failing to make specific findings in discrediting the claimant's testimony. 572 F.3d at 592. We confirmed that *Varney II* allowed a remand for benefits only in "cases 'where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited,'" and held that in *Vasquez*, there were "outstanding issues that must be resolved before a proper disability determination can be made." *Id.* at 593 (quoting *Varney II*, 859 F.2d at 1401). Accordingly, we remanded for further proceedings, not an award of benefits. *Id.* at 594.[9]

---

not create a factual issue that required resolution by the agency where the rheumatologists who treated the claimant (and whose views were entitled to more weight) unanimously concluded she suffered from fibromyalgia, *see Benecke*, 379 F.3d at 594 & n.4 ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an 'opinion of a specialist about medical issues related to his or her area of specialty.'" (citing 20 C.F.R. § 404.1527(d)(5)). By contrast, Treichler's testimony is contradicted by information in the reports of his treating physicians.

[9] *Vasquez* determined that the claimant was credible in light of various equitable considerations, 572 F.3d at 593–94, but this finding did not constitute an application of the *Varney* rule, because *Vasquez* remanded the case for a resolution of outstanding administrative issues, while *Varney II* remanded for an award of benefits. We decline to apply *Vasquez* here, in light of the different factual context and the general rule that the Commissioner has the authority to make factual findings.

Because further administrative proceedings are necessary, Treichler has failed to satisfy the second step of the *Varney* rule. Accordingly, we do not reach the third step of the rule, which arises where the record is fully developed and free from conflicts, making it clear that the ALJ would be required to find the claimant disabled if he credited the claimant's testimony as true. Indeed, after a comprehensive review of the record, we conclude that this case raises "serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison*, 759 F.3d at 1021, and so a remand for further proceedings is warranted in any event in an exercise of discretion.

Because these circumstances do not justify a departure from the ordinary remand rule, the district court must "remand to the agency for additional investigation or explanation." *Lorion*, 470 U.S. at 744.

V

In sum, because the ALJ erred in failing to provide specific reasons for rejecting Treichler's testimony regarding the severity of his symptoms, we must reverse the judgment of the district court affirming that portion of the ALJ's decision. But because the record does not compel a finding of disability, we remand Treichler's disability application to the district court to remand to the agency for further proceedings.[10]

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.**

---

[10] Each party shall bear its own costs on appeal.

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the ALJ erred in discrediting Treichler's medically determinable pain and symptom testimony based on a boilerplate credibility determination. I part company, however, with the majority's remand for further proceedings. I would, instead, remand for the award of benefits. I, therefore, dissent from Part IV of the majority opinion.

**I.**

Under the credit-as-true rule, a reviewing court may "credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Under our precedent, we must remand for an award of benefits if these three factors are met, unless the record discloses that there is "serious doubt" that the claimant is actually disabled. *Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014). Here, each of these factors is satisfied and there is no serious doubt that Treichler is actually disabled.[1]

---

[1] Treichler worked as a tree trimmer and fell 50 feet from a tree. He suffered massive injuries, including numerous fractures and internal injuries.

First, the ALJ failed to provide "legally sufficient reasons" for rejecting Treichler's pain and symptom testimony. *Id.* at 1022. As the majority holds, the ALJ committed legal error in rejecting Treichler's testimony based on boilerplate. Maj. Op. at 22–23.

Second, there are "no outstanding issues that must be resolved before a determination of disability can be made." *Garrison*, 759 F.3d at 1019 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) (internal quotation marks omitted)). We have remanded for additional proceedings when "critical portions of [a treating physician's] testimony . . . were not before the ALJ at all but were presented only to the Appeals Council," *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000), or when "no vocational expert has been called upon to consider all of the testimony that is relevant to the case," *Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003). Such considerations are absent here, where the vocational expert considered all of the relevant testimony, and where no critical evidence was submitted to the Appeals Council. No outstanding issues must be resolved on remand before a disability determination can be made.

Third, "it is clear from the record that the ALJ would be required to find [Treichler] disabled were [his testimony] credited." *Benecke*, 379 F.3d at 593. Treichler testified that he suffers from urinary incontinence up to three times a week, fecal incontinence once or twice a month, catheter use up to four times a day for twenty minutes a time, and incapacitating pain twice a week. Dispositively, the vocational expert testified that each of these conditions, independently, prevents Treichler from performing substantial gainful activity. The vocational expert also testified that disabling

pain one-fourth as severe as Treichler's would render Treichler unemployable. Thus, "the vocational expert's testimony establishes that taking [Treichler's] testimony as true, he was disabled." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

"[Treichler] satisfies all three conditions of the credit-as-true rule and . . . a careful review of the record discloses no reason to seriously doubt that [he] is, in fact, disabled. A remand for a calculation and award of benefits is therefore required under our credit-as-true precedents." *Garrison*, 759 F.3d at 1023.

## II.

The majority, however, concludes that we should not remand for the award of benefits because some evidence in the record contradicts Treichler's testimony. Maj. Op. at 31. I am unpersuaded.

Application of the credit-as-true rule does not depend on the absence of contradictory evidence in the record. Instead, once the credit-as-true rule's three-part test is satisfied, as it has been here, we must remand for the award of benefits unless "*the record as a whole* creates *serious doubt* that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (emphasis added). The mere existence of some contradictory evidence is insufficient: only if that evidence is extensive and compelling does the credit-as-true rule permit us to remand for further proceedings. *Id*. Here, the record as a whole leaves little doubt that Treichler is disabled. On the contrary, the record amply supports Treichler's testimony. Treichler's description of his symptoms – urinary incontinence, fecal incontinence, catheter use, and disabling

pain – is corroborated by numerous opinions from treating physicians and from other sources.

Medical records attest to the severity and continuity of Treichler's pain, even with medication.  Treichler's treating physicians describe his pain as "considerable," "significant," "[a]cute," "chronic," and "constant."  They diagnose his pain as ongoing:  Treichler "still has," "continues to have," and will have "significant pain and discomfort" "for a very prolonged period of time."  Medical opinions also confirm that Treichler's pain is not controlled well by medication:  he receives "very little pain relief" from his medication, and "is not very active because [medication] does not take all of his pain away," leaving him only "somewhat functional." According to other sources, "some days [Treichler] doesn't seem like he can move at all."

Treichler's bladder incontinence, fecal incontinence, and catheter use are similarly affirmed by medical evidence in the record. Treating physicians and nurse practitioners diagnosed Treichler with "leakage of urine," "bladder incontinence . . . 2 times a week," and "bladder problems."    Treating specialists, physicians, and other sources described Treichler as having "significant . . . problems with bowel function," and prescribed self-catheterization "4 times daily." The majority asserts that this evidence is wanting because it appears alongside other portions of the record that downplay the extent of Treichler's disability.  Maj. Op. at 25–26 & n.7. But the mere fact that some evidence raises questions about the severity of Treichler's injuries does not cast doubt on the record as a whole, as required by our precedents to justify a remand. *Cf. Garrison*, 759 F.3d at 1021.   I remain

unconvinced that any of the discrepancies cited by the majority cast doubt sufficient to justify a remand.[2]

Although evidence from treating physicians and from other sources amply supports Treichler's testimony about his disabling pain, bladder incontinence, bowel incontinence, and catheter use, the majority concludes that Treichler's pain testimony, if credited, would not require the ALJ to award him benefits. Maj. Op. at 28. I disagree.

## III.

The majority remands for further proceedings to enable the ALJ to make findings concerning conflicting evidence in the record. *See* Maj. Op. at 31. But the fact "that there is material in the record upon which the ALJ legitimately *could* have rejected . . . testimony" does not justify remand for further proceedings. *Harman*, 211 F.3d at 1178 (emphasis

---

[2] The majority asserts that our review of Treichler's disabilities need not be searching because "we are considering whether the district court abused its discretion in determining that there are outstanding issues in the record that should be decided by the agency under the ordinary remand rule." Maj. Op. at 26–27. We have indicated in the past, however, that in the social security context "the distinction [between de novo and abuse of discretion review] often begins to blur." *Harman*, 211 F.3d at 1176. Moreover, in *Harman*, after articulating the abuse of discretion standard, we applied the credit-as-true rule and, in so doing, closely examined the record to see "whether it was clear from the record that the ALJ would be required to find the claimant disabled were [the claimant's] evidence credited." *Id.* at 1178–80 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1929 (9th Cir. 1996)). The overarching abuse of discretion standard did not prevent us from giving the plaintiff's materials "the consideration to which they are entitled." *Id.* at 1180; *see also Benecke*, 379 F.3d at 593–96. Accordingly, the abuse of discretion standard should not prevent us from fully applying the credit-as-true rule to Treichler's case.

added).  The credit-as-true rule does not consider "whether the ALJ *might* have articulated a justification for rejecting" claimant testimony.  *Id*. at 1179.  When the credit-as-true rule's criteria are met, "remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" a claimant's testimony.  *Id.*

The majority attempts to justify its remand for further proceedings by contending that the second element of the credit-as-true rule is unmet here.  Maj. Op. at 31.  The majority is mistaken.  Under the second element of the credit-as-true rule, we consider whether the "record is fully developed" before the ALJ.  *McCartey v. Massanari*, 298 F.3d 1072, 1077 (9th Cir. 2002); *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 926 (9th Cir. 2002); *Smolen*, 80 F.3d at 1292.  This means we consider whether the "claim of disability has been developed by an evidentiary hearing and numerous medical reports." *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).  We may find the rule's second element unmet only when the record is not sufficiently developed, for example when "critical portions of [a treating physician's] testimony . . . were not before the ALJ at all but were presented only to the Appeals Council," *Harman*, 211 F.3d at 1180; when "additional assumptions should have been incorporated into the ALJ's hypothetical," *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012); or when "no vocational expert has been called upon to consider all of the testimony that is relevant to the case," *Bunnell*, 336 F.3d at 1116.  Here, the second element is clearly met.  The record before the ALJ included all the critical evidence, and the vocational expert was asked to consider all the testimony relevant to the case.  The inquiry under the second element of the credit-as-true rule should end there.

The majority, instead, holds that the second element of the credit-as-true rule is unmet where the record does not unquestionably establish that a claimant's testimony is true. *See* Maj. Op. at 28. This is improper. Fundamentally, the credit-as-true rule asks whether "*taking the claimant's testimony as true*, the ALJ would clearly be required to award benefits." *Lingenfelter*, 504 F.3d at 1041 (emphasis added). It does not ask, as the majority does, whether the claimant's testimony is clearly established as true by the record.

The majority points to *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), as an example of a case where we remanded to the ALJ for further proceedings after finding legal error. Maj. Op. at 27. The claimant's case in *Nguyen*, however, was based primarily on the reports of doctors; the claimant's testimony by itself was insufficient to establish that he was disabled. *See Nguyen*, 100 F.3d at 1464–67. The court thus made no mention of the credit-as-true rule because it was not relevant. In this case, by contrast, Treichler's testimony by itself would, if credited, entitle him to benefits.

The majority's dismissal of *Benecke* is similarly flawed. According to the majority, the claimant's analogy to *Benecke* is inapposite because *Benecke* was an "unusual case" where the record clearly established the defendant was unable to perform any substantial gainful work existing in the national economy. Maj. Op. at 29–30. However, much like the case at hand, non-examining physicians offered testimony in *Benecke* suggesting the claimant was not disabled. *Benecke*, 379 F.3d at 592–93. The *Benecke* court applied the credit-as-true rule in spite of this evidence because the full record left

no serious doubt the claimant was disabled. *See id.* at 595.[3] We should do the same.

The majority also contravenes the spirit and purpose of the credit-as-true rule to "ensure that pain testimony [is] carefully assessed" so "that credible claimants' testimony is accepted the first time around." *Varney*, 859 F.2d at 1398. It springs from a recognition of the extreme costs – "financial, medical, and emotional" – of an ALJ's failure carefully to assess a claimant's testimony in the initial proceeding. *Id.* at 1399. Remanding for further proceedings even when the credit-as-true rule is met, as the majority does, ignores these values and permits the Commissioner to administer "an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 595.[4]

---

[3] According to the majority, there was no substantive evidence contradicting the claimant's disability claim because the court "implicitly held that the conclusions of the non-treating and non-examining physicians did not create a factual issue that required resolution by the agency." Maj. Op. at 29–30 n.8. Though we did note in *Benecke* that the opinions of non-treating physicians should be given "less weight," we never stated that such opinions received no weight. *Benecke*, 379 F.3d at 592. Contrary to the majority's assertion, our application of the credit-as-true rule in *Benecke* came only after we acknowledged the limited evidence weighing against the claimant's disability claim. *See id.* at 593–94.

[4] The credit-as-true rule is aimed at mitigating the terrible costs claimants must endure after erroneous credibility assessments by encouraging the ALJ to weigh such testimony carefully. *Varney*, 859 F.2d at 1398. The fact that such a scheme may penalize the Commissioner in litigation is merely a byproduct of its true purpose. The majority's suggestion that the rule is principally concerned with judicial efficiency thus is incorrect. *See* Maj. Op. at 29. Though in *Harman* we did articulate a general concern that remands should occur when further proceedings are

"The Commissioner, having lost this appeal, should not have another opportunity to show that [Treichler] is not credible any more than [Treichler], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). But the majority gives the Commissioner precisely that second bite at the apple and makes a shambles of the credit-as-true rule.

Because I would remand for the calculation and award of benefits, I respectfully dissent from the majority's remand for further proceedings.

---

likely to be useful, we specifically noted a "limited exception" to that principle when the credit-as-true rule's requirements are met. *Harman*, 211 F.3d at 1179.