NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 11 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSEPH SMITH,

   Plaintiff-Appellant,

 v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

   Defendant-Appellee.

No. 21-35430

D.C. No. 4:20-cv-05075-MKD

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted April 12, 2022
Seattle, Washington

Before: BOGGS,[**] HURWITZ, and SUNG, Circuit Judges.

Joseph Smith sustained severe hand injuries at work in 2011. He developed

bilateral carpal tunnel syndrome and in 2017, after years of surgeries and increas-

ingly severe symptoms, applied for Title II disability-insurance benefits. Although

---

[*]   This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Danny J. Boggs, Circuit Judge of the United States Court of Ap-
peals for the Sixth Circuit, sitting by designation.

an administrative law judge ("ALJ") concluded that Smith had severe impairments affecting his work,[1] the ALJ also found that Smith was capable of performing light work, could hold a number of jobs in the national economy, and was therefore not disabled. The Commissioner of Social Security and the district court agreed. Smith now appeals.

In substance, Smith objects before us to only two elements of the ALJ's determination. First, he challenges the ALJ's weighing at step two of the disability-benefits analysis of the evidence with respect to Smith's claim of somatic-symptom disorder—a mental condition constituting an unhealthy obsession with one's physical symptoms. Second, Smith attacks the ALJ's assessment of his credibility. Reviewing the district court judgment de novo, *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), we affirm.[2]

---

[1] The ALJ found that three physical conditions severely impaired Smith: (1) his mild osteoarthritis in both of his thumbs, (2) his status after carpal-tunnel-release surgery on both hands, and (3) his status after cubital-tunnel-release surgery on his left elbow. However, the ALJ also found that Smith's claimed mental conditions—somatic-symptom disorder and polysubstance abuse—were not severe impairments. *See also* DSM-5, *Somatic Symptom Disorder* (defining somatic-symptom disorder in part as "[e]xcessive thoughts, feelings, or behaviors" regarding "the seriousness of one's symptoms").

[2] Smith also briefly challenges the ALJ's reasoning at step five of the disability-benefits analysis—the vocational assessment. But Smith fails to show that the hypothetical the ALJ presented to the vocational expert was not "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Smith's argument hinges on whether the ALJ should have presented to

1.     The ALJ concluded that Smith's claimed somatic-symptom disorder was not a severe impairment.  Smith objects to that conclusion on two grounds: (1) the ALJ's weighing of Dr. Robert Smiley's opinion, and (2) the ALJ's severity determination at step two of the five-step evaluation process for disability claims, *see* 20 C.F.R. § 404.1520.

Dr. Smiley was one of at least fourteen medical professionals to evaluate Smith's injuries.  He was not one of Smith's treating physicians, but instead based his evaluation of Smith solely on the available records.  At the hearing, Dr. Smiley noted that he was only in a position to opine on Smith's hand and wrist problems, rather than his claimed somatic-symptom disorder.  Based on the available medical records, Dr. Smiley concluded that Smith "should be able to function at the light level," though "he could only do things with his left hand on an occasional basis." When asked by the ALJ what limitations Smith might experience on his work, Dr. Smiley said that he "suspect[ed]" that on the basis of the claimed somatic-symptom disorder and chronic pain, Smith "would have had an awful lot of days where he couldn't or wouldn't work."[3]

the vocational expert off-hand comments by Dr. Robert Smiley, a non-examining physician.  Because we conclude below that Dr. Smiley was not opining on Smith's somatic-symptom disorder, Smith's vocational-assessment argument fails.

[3] Dr. Smiley specifically noted that he was not in a position to evaluate Smith's psychological condition, as distinct from his physical condition, stating "I can't

The other physicians who opined on Smith's physical condition generally agreed with Dr. Smiley that Smith was severely impaired as a result of his hand, wrist, and elbow injuries and resultant pain. Appellee's Answering Br. 6–12 (describing the medical opinions of Drs. Eisler, Gillespie, Newton, Cancado, Brinkman, Opara, and Moss). In addition, three physicians later reviewed Smith's records and concluded that despite his injuries, he was capable of light work—the last of these was Dr. Smiley.

With respect to mental ailments, two psychiatrists treated Smith in person. In 2013, Dr. Thomas Genthe diagnosed Smith with substance abuse and depression; in 2015, Dr. Michael Friedman diagnosed him with somatic-symptom disorder. Two other psychiatrists, Drs. Bruce Eather and Patricia Kraft, reviewed Smith's medical records and found no severe psychological impairments. Based on these medical statements, the ALJ found that Smith's physical impairments were severe, but that his somatic-symptom disorder was not.

Smith now asserts that the ALJ should have decided otherwise, relying on Dr. Smiley's suspicion that he would have to miss work because of the somatic-symptom disorder and chronic pain. But, as the district court noted, the opinion of a

---

really get into somatoform problems." And he did so for a second time just before making the statement in question that "I'm not supposed to go into somatoform problems, but I suspect . . . he would have had an awful lot of days where he couldn't or wouldn't work."

"reviewing physician" like Dr. Smiley is entitled to less weight than those of examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, the ALJ did not improperly weigh the opinion of any of the medical professionals who assessed Smith's condition. She accorded Dr. Smiley's statements significant weight, conceding that Smith had "mild somatoform disorder," which was in line with the diagnosis made earlier by treating psychiatrist Dr. Friedman. And the ALJ likewise relied on Dr. Kraft's finding that Smith's somatic-symptom disorder was not severe. Dr. Friedman made no determination as to whether any somatic-symptom disorder was severe, and indeed "opined that from a psychiatric standpoint, there was no reason the claimant could not be gainfully employed." Because Dr. Friedman's testimony was not "contradicted by another doctor," and the ALJ did not "reject the opinion[ ]," there was no reversible error with respect to how the ALJ weighed the various psychological evaluations. *Ford*, 950 F.3d at 1154 (quoting *Lester*, 81 F.3d at 830).

The cases Smith cites in support of his argument are distinguishable. It is true, as Smith notes, that Dr. Smiley may give an opinion as to psychological symptoms even though he is not a trained psychiatrist. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). But as the record shows, Dr. Smiley did not opine on whether Smith's somatic-symptom disorder was severe—only on whether he might miss

5

work (because of either physical or mental impairments).[4]  When a record contains only one psychological evaluation (in addition to physical evaluations), that psychological evaluation is "uncontradicted."  *See Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985).  And the record here contains the evaluations of *four* psychiatrists, only one of whom even diagnosed somatic-symptom disorder, and none of whom stated that it was a severe impairment.

Smith's remaining arguments regarding whether his somatic-symptom disorder was severe—the step-two analysis—are likewise without merit.  A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1522.  When reviewing an ALJ's step two analysis, "we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Smith] did not have a medically severe

---

[4] Smith argues that "the ALJ never considered the combined effects of claimant's physical and mental impairments" as analyzed by Dr. Smiley.  The ALJ credited Dr. Friedman's determination that Smith suffered from mild somatoform disorder. An ALJ must consider the combined effect of all a claimant's impairments when assessing their severity at step two.  20 C.F.R. § 404.1523. She also must consider them when determining the claimant's Residual Functional Capacity (RFC) at step four, "without regard to whether each alone was sufficiently severe."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Even assuming that the ALJ erred in not considering the combined effects of Smith's physical and mental impairments, any error was harmless because Smith does not identify evidence in the record of effects of his mild mental impairment for which the ALJ did not account in her severity or RFC determinations.  Smith points only to Dr. Smiley's offhand comment about absenteeism which, for the reasons described above, the ALJ was not required to credit.

impairment." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). At step two, the claimant "bears the burden of establishing his disability." *Ibid.* The record does not compel the conclusion that Smith's psychological ailments were severe. The diagnosing psychiatrist opined that Smith was able to work even with somatic-symptom disorder, and subsequent psychiatrists who examined Smith's records found Smith's somatic-symptom disorder not severe. Because "[t]he mere existence of an impairment is insufficient proof of a disability," and Smith offers no additional proof here, the ALJ's findings as to somatic-symptom disorder were supported by substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

2.      Smith also argues that the ALJ should have found him credible when evaluating his statements that he was completely unable to work. Under the deferential standard of review for credibility determinations, we generally "leave it to the ALJ to determine credibility," while requiring that a "finding that a claimant's testimony is not credible must be sufficiently specific" to ensure that the ALJ "did not arbitrarily discredit" it. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quotation marks omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). The ALJ's credibility determination will not be disturbed if it "identif[ies] what testimony is not credible and what evidence undermines" it. *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ recounted in great detail Smith's subjective testimony

regarding his pain and ability to work. She noted that while the severe impairments to Smith's hands and wrists could have caused his reported symptoms, those symptoms were not supported by the evidence in the record. In discounting Smith's statements, the ALJ pointed to (1) a lack of any finding by any physician that Smith was unable to work, (2) the daily activities Smith participated in that were inconsistent with a totally disabling condition,[5] and (3) Smith's ability to provide childcare to an extent similar to "full-time work." The ALJ's determination here was not "a single general statement that the claimant's statements . . . are not credible"; instead, the ALJ properly "gave clear and convincing reasons to support her non-credibility determination" based on evidence in the record. *Brown-Hunter*, 806 F.3d at 493–94 (quotation marks omitted) (citing *Treichler*, 775 F.3d at 1102–03). Because the ALJ adequately explained her reasoning, our deferential review does not allow us to second-guess whether she should have credited his testimony.

**AFFIRMED.**

---

[5] Smith reported in part that "he mowed the lawn, biked, did household chores, [and] raked leaves."