NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 22 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HATHER J. LEMCKE, | No.    23-55720 |
| AKA Heather J. Lemcke, | D.C. No. 5:22-cv-01000-AS |
| Plaintiff-Appellant, | |
| v. | MEMORANDUM* |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Alka Sagar, Magistrate Judge, Presiding

Submitted July 18, 2024**
San Francisco, California

Before:  M. SMITH, BENNETT, and JOHNSTONE, Circuit Judges.

An administrative law judge ("ALJ") denied Heather Lemcke's application

for disability insurance benefits under Title XVI of the Social Security Act, and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

this denial became the Commissioner's final decision. The district court affirmed, and Lemcke appeals. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

"We review the district court's order affirming the ALJ's denial of social security benefits de novo, and we will not overturn the Commissioner's decision 'unless it is either not supported by substantial evidence or is based upon legal error.'" *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

1.      The ALJ did not fail to develop the record as to Listing 12.05 (intellectual disorder). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Even in the absence of IQ testing, the record was adequate to determine that Lemcke did not meet the criteria for paragraph A—in particular, "dependence upon others for personal needs"—or paragraph B—in particular, "extreme limitation of one, or marked limitation of two," of four specified areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(A)(2), (B)(2); *see Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) ("[A] claimant's impairment does not match a listing unless it meets '*all* of the specified medical criteria.'" (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990))). The ALJ was not required to develop the record further. *See Ford*, 950 F.3d at 1156 ("[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow

2

for proper evaluation of the evidence." (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001))).

2.       Contrary to Lemcke's assertions, the ALJ explicitly considered Lemcke's obesity, pain, and migraines in making the residual functioning capacity ("RFC") determination.  Lemcke provides no basis for us to find that the ALJ failed to factor those conditions into the RFC assessment or committed any other legal error.  Instead, Lemcke appears to advocate for *her* assessment of the evidence over the ALJ's.  But "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." (citation and internal quotation marks omitted)).

3.       The ALJ's step-five determination was supported by substantial evidence.  At step five, the ALJ relied on a vocational expert's testimony to determine that, given Lemcke's age, education, work experience, and RFC, she could find work that exists in significant numbers in the national economy, including as a "checker I" and "cleaner, housekeeping."  Lemcke argues that the jobs of "cashier and housekeeper" "require production rate pace," and thus are inconsistent with both the ALJ's RFC finding that "limits her to simple, routine

3

tasks" and with her "physical and intellectual capa[b]ilities." But Lemcke provides no authority supporting that the relevant occupations require production rate pace.[1] She also does not "identify any evidence undermining the vocational expert's testimony," *Ford*, 950 F.3d at 1160, or point to any legal error in the ALJ's step-five determination. *See id.* ("Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding.").

**AFFIRMED.**

---

[1] Lemcke incorrectly states that the ALJ determined that she could work as a cashier. The ALJ listed "checker I" and not cashier as one of the jobs she could do.