

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAROLYN M. HANES, | No. 14-16055 |
| Plaintiff - Appellant, | D.C. No. 2:13-cv-00309-SRB |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted May 9, 2016
San Francisco, California

Before: KLEINFELD, IKUTA, and WATFORD, Circuit Judges.

Carolyn M. Hanes appeals from the district court's order affirming the

Administrative Law Judge's (ALJ) denial of benefits. We have jurisdiction under

28 U.S.C. § 1291, and we review de novo. *Treichler v. Comm'r of Soc. Sec.*

*Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

The ALJ's reasons for rejecting Hanes's testimony regarding the severity of her symptoms were "specific, clear and convincing," *see id.* at 1102, and were supported by substantial evidence. In making his adverse credibility determination, the ALJ determined that Hanes's description of extreme pain and disability was inconsistent with her description of her daily activities, which included cooking, cleaning, doing laundry, driving, shopping, visiting with family, and traveling. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). Moreover, the ALJ supported his conclusion with evidence of Hanes's conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ did not err in giving slight weight to his personal observations of Hanes's functioning at the hearing because the observations did not form the "sole basis" of his adverse credibility determination.[1] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ also found that the objective medical evidence in the record included evidence that Hanes's condition improved with treatment.

---

[1] Any error in the ALJ's speculation of Hanes's sleeping patterns was therefore harmless. *See Treichler*, 775 F.3d at 1099.

The ALJ's residual functional capacity assessment was supported by substantial evidence. In light of the conflicting medical opinions, the ALJ gave "specific and legitimate reasons" for discounting the treating physicians' opinions, and those reasons were supported by substantial evidence. *See Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012)*.* The ALJ properly concluded that Dr. Hawkins's and Dr. Pena's functional assessments were not supported by clinical or diagnostic findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In addition, the ALJ reasonably relied on his findings regarding Hanes's daily activities, her conservative treatment, and her positive response to that treatment to conclude that the assessments of Dr. Hawkins and Dr. Pena were inconsistent with the objective evidence in the record. The ALJ similarly did not err in giving little weight to the opinion of Hanes's examining physician, Dr. Mansfield. Dr. Mansfield diagnosed only minimal mental limitations, his description of Hanes's medical issues was contradicted by the objective evidence in the record, and he deferred to Hanes's physician regarding her ability to sustain gainful employment. The dissent engages in an extensive review and evaluation of the medical records and testimony, but, "as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact," *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). While "[i]t may well be that a different

3

judge, evaluating the same evidence, would have found [Hanes's] allegations of disabling pain credible," *id.*, so long as the ALJ's interpretation of the record is reasonable and supported by substantial evidence, we may not second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Even if the ALJ erred in rejecting the testimony of Hanes's husband for not being under oath, that error was harmless. *See Treichler*, 775 F.3d at 1099. The ALJ gave clear and convincing reasons for rejecting Hanes's testimony, and Hanes's husband's testimony merely parroted her complaints. *See Molina*, 674 F.3d at 1117.

In concluding that Hanes could perform work, the ALJ reasonably relied on the vocational expert's (VE) testimony given in response to the ALJ's hypothetical. The hypothetical contained all of Hanes's limitations that the ALJ found were supported by the record, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), so the ALJ did not err in excluding limitations from Dr. Hawkins and Dr. Pena. Moreover, the ALJ did not err by declining to credit the VE's testimony in regards to a hypothetical that included moderate mental limitations. The moderate mental limitations were not supported by the record because they were taken from a reviewing physician's check-the-box form, which is entitled to little weight, *see Molina*, 674 F.3d at 1111–12, and were contradicted by the same

4

reviewing physician's conclusion that Hanes's mental capacity enabled her to perform unskilled work on a sustained basis. *See id.*

**AFFIRMED**.

*Hanes v. Colvin*, No. 14-16055

WATFORD, Circuit Judge, dissenting:

Our review in Social Security cases is "highly deferential," *Valentine v. Commissioner, Social Security Administration*, 574 F.3d 685, 690 (9th Cir. 2009), but that deference has limits. We can uphold an ALJ's decision only if it applies the correct legal standards and is supported by substantial evidence. The ALJ's decision in this case fails to clear that bar.

Let's start with the ALJ's determination that Hanes' testimony that she suffers from persistent, disabling pain was "less than fully credible." Because Hanes presented evidence of several underlying impairments, including fibromyalgia and degenerative disc disease, and because the record contains no affirmative evidence of malingering, the ALJ needed to provide "specific, clear, and convincing" reasons for discounting her testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see Carmickle v. Commissioner*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008).

None of the ALJ's five reasons for discounting Hanes' testimony holds water. First, Hanes' daily living activities—which included preparing light meals, folding laundry, and maintaining a minimum standard of hygiene—weren't inconsistent with her claims of frequent, debilitating pain, so they don't provide any basis for thinking that she is exaggerating her symptoms. *See Garrison v.*

*Colvin*, 759 F.3d 995, 1015–16 (9th Cir. 2014). Second, the ALJ's finding that Hanes had received "essentially routine and/or conservative" treatment, not "the type of medical treatment one would expect for a disabled individual," is frankly baffling in light of the record, which indicates that Hanes has relied on high doses of a variety of powerful narcotic painkillers (including Opana, Fentanyl, and morphine), and that she has undergone spinal injections and radiofrequency ablation. It's unclear what additional treatment she should have sought out, given that a neurosurgeon told her back surgery would pose a high risk of complications and was unlikely to alleviate her symptoms in any event. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Third, the Commissioner concedes that it was improper for the ALJ to speculate that Hanes' irregular sleep patterns were attributable to her daytime napping rather than, as she claims, to being frequently awoken by pain at night. Fourth, that Hanes didn't look like she was in pain at the hearing isn't independently sufficient to support a denial of benefits. *See Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989).

That leaves one remaining rationale for the ALJ's adverse credibility determination: that the medical evidence supposedly indicates she tends to exaggerate her symptoms. This last rationale is insufficient as well. Although Dr. Cunningham noted "giveaway weakness" in the exam, he stated that the giveaway

weakness was "due to pain" and that Hanes gave good effort on the exam. Dr. Wasserman opined that Hanes' symptoms were mostly consistent with fibromyalgia, but observed some "concerning conversion type signs" and strongly recommended mental-health treatment. The possibility that Hanes suffers from a conversion disorder isn't grounds for concluding that she's exaggerating her pain, only that her pain may be at least partly psychological in origin. *See Carradine v. Barnhart*, 360 F.3d 751, 754–55 (7th Cir. 2004). All that's left, then, is Dr. Wasserman's aside that Hanes' pain may have a "malingering component." In light of the lengthy medical record, which details Hanes' extensive, fruitless search for pain relief and multiple doctors' acceptance of her complaints as genuine, that comment is too thin a reed to support the ALJ's finding that Hanes exaggerated her symptoms.

The ALJ's improper credibility finding wasn't the only flaw in his reasoning. He also failed to give "germane" reasons for disregarding the "third-party function reports" submitted by Hanes' husband. *See Rounds v. Commissioner*, 807 F.3d 996, 1007 (9th Cir. 2015). Hanes' husband didn't simply parrot her subjective complaints of pain but instead described her limited abilities around the house, as he was well qualified to do. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). The fact that his account of Hanes' functional

limitations corroborated hers was reason to think that both were telling the truth, not a germane reason for discrediting his reports. The ALJ concluded in the alternative that, even if the husband's statements were credited, they established only that Hanes engaged in daily living activities that indicated she could engage in light work. But those activities were consistent with her claims of disabling pain, so her husband's statements didn't support the ALJ's conclusion that Hanes was able to work.

Finally, the ALJ erred in weighing the medical evidence. He improperly discounted the opinions of Hanes' treating physicians, both of whom assessed Hanes as having functional limitations incompatible with full-time work. Instead, the ALJ credited the opinions of an examining physician and a non-examining physician, both of whom found that Hanes' impairments didn't preclude her from engaging in light work. The ALJ failed to provide the "specific and legitimate" reasons required by our case law to support that decision. *See Garrison*, 759 F.3d at 1012.

Hanes' primary care physician, Dr. Hawkins, reported that Hanes had been diagnosed with fibromyalgia, bipolar disorder, and degenerative disc disease, which severely limited her physical functioning. He also opined that pain, dizziness, and fatigue limited her ability to sustain normal work and that her

medication caused side effects such as impaired judgment and hypersomnolence. The ALJ rejected that opinion on the grounds that it was (1) "not supported by objective evidence and . . . inconsistent with the record as a whole"; (2) conclusory and unsupported by objective clinical or diagnostic findings; and (3) inconsistent with the finding that Hanes pursued only conservative treatment and was cleared to attend an exercise class.

Again, none of those reasons hold up. The first is both meaningless boilerplate and contrary to the record, which contains objective evidence of lower-back disorders, multiple diagnoses of fibromyalgia supported by positive "tender point" tests, and Hanes' own testimony. Although the second rationale might have been valid had Dr. Hawkins supplied only a check-the-box form, *see Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), his opinion was instead supported by extensive treatment notes, including those of the specialists to whom he referred her. The ALJ therefore erred by discounting Dr. Hawkins' opinion on this basis. *See Garrison*, 759 F.3d at 1014 n.17. The third rationale cannot stand because, as discussed above, Hanes' treatment was anything but "conservative." Nor does the record support the ALJ's conclusion that Hanes' participation in a light aerobic exercise program was inconsistent with Dr. Hawkins' assessment that she couldn't stand or walk for more than two hours a day or lift more than ten pounds.

Dr. Peña, who worked in Dr. Hawkins' office, assessed Hanes as having similar limitations. The ALJ's reasons for discounting Dr. Peña's opinion tracked those for discounting Dr. Hawkins' opinion and were similarly faulty. Moreover, the ALJ compounded these errors by discounting Peña's opinion on the erroneous ground that Peña "precluded the claimant from driving, yet the claimant drives." Hanes testified that, although she has a driver's license, she drives just once a month and has "problems" doing so because her medications make her "real foggy." That perhaps supplied reason to think she shouldn't be behind the wheel, but it is not a valid basis for discounting her treating physician's opinion. The ALJ also discounted Peña's opinion because there was no "objective evidence" that he actually examined her, but Hanes testified at the hearing that Peña gave her a physical exam when he completed his statement. That testimony must be credited because the ALJ found Hanes "less than fully credible" only in describing the severity and limiting effects of her pain and depression.

Instead of heeding Hanes' treating physicians, the ALJ credited the opinion of an examining physician, Dr. Cunningham, who opined that she had moderate functional limitations that didn't preclude her from working. The ALJ gave three reasons for giving "great weight" to Dr. Cunningham's opinion: (1) Dr. Cunningham found functional limitations that were "essentially the same" as those

of the ALJ's own residual functional capacity (RFC) assessment; (2) Dr. Cunningham personally observed and examined Hanes; and (3) Dr. Cunningham's "findings upon examination are consistent with the findings in the record." The first rationale was circular. Because the ALJ purported to base his RFC assessment on the medical evidence, consistency with that assessment wasn't a legitimate reason, grounded in substantial evidence, for crediting or discrediting the medical evidence. As for the second rationale, the fact that Dr. Cunningham personally observed and examined Hanes once was not a legitimate reason to credit his opinion over those of her *treating physicians*, who personally observed and examined her numerous times. The third rationale was mere boilerplate, not a specific, substantive basis for crediting Dr. Cunningham's opinion over those of the two treating physicians. *See Garrison*, 759 F.3d at 1012–13.

The ALJ also gave significant weight to the opinion of a non-examining physician (apparently Dr. Fujikami), who reviewed Hanes' medical records and concluded that she retained the ability to do light work. It's settled that a non-examining physician's opinion alone is not substantial evidence that justifies the rejection of a treating or examining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The ALJ gave significant weight to this opinion "[f]or the same reasons" he credited Dr. Cunningham's, but none of those reasons

were legitimate, and the second was particularly inapt as a reason for crediting the opinion of a non-examining physician. The ALJ's only other reason for crediting the non-examining physician's opinion was simply that it was "consistent with the objective evidence of record." Such boilerplate is not a specific and legitimate reason for crediting a non-examining physician's opinion over the opinions of the treating physicians.

In sum, the ALJ failed to offer adequate reasons for discrediting Hanes' testimony and her husband's reports, or for discounting her treating physicians' opinions regarding her functional limitations. If we credit the improperly discredited evidence as true, *see Benecke v. Barnhart*, 379 F.3d 587, 593–96 (9th Cir. 2004), the record compels the conclusion that Hanes is disabled. I would therefore reverse and remand with instructions to award benefits.